AMERICAN MACHINE & FOUNDRY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 42280.    Promulgated August 13, 1929.

*J. Marvin Haynes, Esq.*, and *C. J. McGuire, Esq.*, for the petitioner.
*A. H. Murray, Esq.*, for the respondent.

OPINION.

MILLIKEN: In November, 1928, respondent mailed the following letter to petitioner:

TREASURY DEPARTMENT,
WASHINGTON, *November 15, 1928.*

IT: AR: D
BSB-60D
AMERICAN MACHINE AND FOUNDRY COMPANY,
    *5520 Second Avenue, Brooklyn, New York*
SIRS:

In accordance with Section 274 of the Revenue Act of 1926 you are advised that the determination of your tax liability for the year 1916 discloses a de-

ficiency of $57,160.82, as shown in the attached statement, as transferee of Automatic Machine Products Company, Brooklyn, New York, under Section 280 of said Act.

The section of the law above mentioned allows you to petition the United States Board of Tax Appeals within sixty days from the date of the mailing of this letter for a redetermination of your tax liability. However, if you acquiesce in this determination, you are requested to execute the enclosed Form 866 and forward both original and duplicate to the Commissioner of Internal Revenue, Washington, D. C., for the attention of IT : C : P–7.

Respectfully,

D. H. BLAIR,
*Commissioner.*
By WM. T. SHERWOOD,
*Acting Deputy Commissioner.*

The statement attached to the above letter shows that respondent has determined a deficiency in munitions manufacturer's tax for the year 1916 in the amount set forth in the letter against Automatic Machine Products Co. Within the prescribed period petitioner filed its petition with the Board seeking a redetermination of the liability asserted against it, in which it asserted several errors which need not now be discussed. Respondent has moved to dismiss the petition and as ground therefor states, "That the deficiency in tax involved in this appeal is a deficiency in munitions manufacturer's tax imposed by section 301, Title III of the Act of Congress approved September 8, 1916, therefore, the Board has no jurisdiction to hear and determine the appeal." The deficiency determined against the Automatic Machine Products Co. was for the tax imposed by section 301 (1) of the Revenue Act of 1916, which in part provides:

That every person manufacturing (a) gunpowder and other explosives, excepting blasting powder and dynamite used for industrial purposes; (b) cartridges, loaded and unloaded, caps or primers, exclusive of those used for industrial purposes; (c) projectiles, shells, or torpedoes of any kind, including shrapnel, loaded or unloaded, or fuses, or complete rounds of ammunition; (d) firearms of any kind and appendages, including small arms, cannon, machine guns, rifles, and bayonets; (e) electric motor boats, submarine or submersible vessels or boats; or (f) any part of any of the articles mentioned in (b), (c), (d) or (e); shall pay for each taxable year, in addition to the income tax imposed by Title I, an excise tax of twelve and one-half per centum upon the entire net profits actually received or accrued for said year from the sale or disposition of such articles manufactured within the United States: *Provided, however,* That no person shall pay such tax upon net profits received during the year nineteen hundred and sixteen derived from the sale and delivery of the articles enumerated in this section under contracts executed and fully performed by such person prior to January first, nineteen hundred and sixteen.

The liability determined by respondent against petitioner was determined in pursuance of section 280 of the Revenue Act of 1926, which in part reads:

SEC. 280. (a) The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same

manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by the title (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds) :

(1) The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this title or by any prior income, excess-profits, or war-profits tax Act.

In support of his motion, respondent contends that the munitions manufacturer's tax is an excise tax and that the jurisdiction of the Board is limited to the redetermination of deficiencies in income, excess-profits, war-profits and estate taxes and to the redetermination of liabilities of transferees under sections 280 and 316 of the Revenue Act of 1926. Petitioner's contentions are thus stated in the brief filed in its behalf:

I. The Revenue Act of 1916 is a *prior income tax act*, within the meaning of section 280 (a) (1), Revenue Act of 1926.

II. The Munitions Manufacturer's Tax imposed by Title III, Section 301 (1), Revenue Act of 1916, is an income tax.

We may state at the outset that we are not concerned with any abstract economic definition of the terms " excise tax " or " income tax." The question presented is what these terms import within the meaning of section 280 and of various revenue acts. We may, however, state that it seems clear to us that the munitions manufacturer's tax imposed by the Revenue Act of 1916 falls within the same classification as the Act of August 5, 1909, and imposes a tax upon the manufacturers of certain munitions. Such a tax is constitutional, irrespective of the Sixteenth Amendment, even though the tax is not apportioned, and also irrespective of the fact that the tax is measured by net profits. See *Flint* v. *Stone Tracy Co.*, 220 U. S. 107.

Another important fact must be noted. Until the enactment of sections 280 and 316 of the Revenue Act of 1926, respondent did not possess power to determine the liability of a transferee at law or in equity. The only powers he now possesses in this respect are to be found in these two sections, and by both of them authority is conferred upon the Board to redetermine the liability. Such was the intention of Congress. See Conference Report, H. R. 356, 69th Cong., p. 45, where it is pointed out that an appeal could be filed with the Board from such a determination. It is clear that the measure of the authority of respondent under these sections is the measure of the jurisdiction of the Board. Whatever liability on the part of a transferee respondent may legally determine, the Board, upon appeal, may redetermine. So that in the last analysis the jurisdiction of the Board depends upon the power of respondent. If the Board does not possess jurisdiction, it is because respondent lacks authority.

With respect to its first contention, counsel for petitioner assert in their brief:

*If the Revenue Act of 1916 is not an income tax act, then the Board has no jurisdiction of a transferee case involving taxes imposed by such Act, even though admittedly the taxes are income taxes.* The only jurisdiction conferred upon the Board in transferee cases is that provided for in Section 280 (a) (i). It *does not* invest jurisdiction when a case involves only *income taxes* imposed by a prior revenue act. It *does invest* jurisdiction when a case involves taxes imposed by a prior *income tax act.*

From the above the deduction is drawn that the Board has jurisdiction in the case of all transferees, it matters not what the tax may be, so long as it is imposed under the Revenue Act of 1916 or any revenue act prior to the Revenue Act of 1926. As above pointed out, this also depends on the authority of respondent to determine such liability. The vice in the above contention lies in the fact that it is assumed that because the revenue acts contain provisions as to income taxes, therefore, they are as a whole income-tax acts within the meaning of section 280. By the same token they could be called " Stamp Tax Acts," " Estate Tax Acts," " Tax on Beverage Acts " or by the name of any other tax provided therein. A review of these acts shows that each act is divided into " Titles." These " Titles " are in the Revenue Act of 1916 as follows:

Title      I—Income Tax.
Title     II—Estate Tax.
Title    III—Munitions Manufacturer's Tax.
Title     IV—Miscellaneous Taxes.
Title      V—Dye Stuffs.
Title     VI—Printing Paper.
Title    VII—Tariff Commissions.
Title VIII—Unfair Competition.
Title    IX—(which is general and also makes an appropriation for the benefit of families of soldiers).

The other revenue acts are also divided into " Titles " and one " Title " in each of the acts is " Income Tax." Thus, Congress has defined for us what they meant by the term " Income Tax Act." They meant so much of each revenue act as imposed what they in the statute termed an " Income Tax."

This construction is borne out by the words of section 280. If that section, as contended by petitioner, gave respondent authority to determine a liability of a transferee in respect of any and all taxes imposed by these revenue acts, then there was no necessity of inserting the words " excess-profits " or " war-profits " tax. If petitioner is correct, respondent would have possessed this authority under the words " Income Tax Act." But Congress recognized that it had defined these various taxes by placing them under " Titles " and taking notice of Title II of the Revenue Act of 1917, " War

Excess-profits Tax," and of Title III of the Revenue Acts of 1918 and 1921, " War-profits and Excess-profits Tax," they inserted these words in order to confer authority upon respondent which he would not otherwise have possessed; that is, to determine the liabilities of transferees of property of persons owing such profits taxes. If petitioner's first contention be true, respondent would possess under section 280 the authority to determine the liability of a transferee of property of an estate owing an estate tax and therefore there was no necessity for the insertion of section 316 of the Revenue Act of 1926, the material parts of which read:

Sec. 316. (a) The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this title (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds) :

(1) The liability, at law or in equity, of a transferee of property of a decedent or donor, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed by this title or by any *prior estate tax Act* or by any gift tax Act. (Italics supplied.)

Here we find Congress referring to what petitioner terms any prior " income tax Act " as " any prior estate tax Act " or by " any gift tax Act," thus clearly showing that these terms refer to the particular title in each revenue act imposing these particular taxes. Congress inserted section 316 because without it respondent would not have possessed the authority therein delegated. From all this we find that, where Congress determined to vest in respondent the power to determine the liability of the transferee, it has limited his authority to those transferees who had received the property of one who owed one of four kinds of tax—income tax, excess-profits tax, war-profits tax, or estate tax, and then pointed out either in the then revenue act or in the prior revenue acts the meanings of these terms by inserting them as titles therein.

What we have said applies equally to the contention that the munitions manufacturer's tax was an income tax within the meaning of section 280. We, however, take occasion to again point out that the munitions manufacturer's tax was a tax on certain occupations measured not by total net income (cf. *Flint* v. *Stone Tracy Co.*, *supra*), but by " net profits " received from the sale or disposition of the munitions. In our opinion it was not an income tax, but was what the statute terms it, an " excise tax," measured by net profits. But, conceding for the purpose of this opinion that this tax might fall within the economic definition of the term " income tax," we are clearly of the opinion that it is not an income tax within the meaning of section 280 or of any of the revenue acts prior to the Revenue Act

of 1926, each of which clearly sets forth in its titles what, within the meaning of each act, was an income tax.

That this is the correct interpretation of that section 280 and the various revenue acts is demonstrated by the fact that although the various excess-profits taxes and war-profits taxes were bottomed on net income, as defined in the various income-tax provisions of the various revenue acts, it was found necessary, and properly so, to insert these terms in section 280 in addition to the term "income * * * tax Act." Thus Congress has made clear their meaning. They not only confer on respondent power to determine liabilities of those who had received property of persons owing income tax, but they went further, to extend this power to the transferees of those who owed another character of tax, even though the basis of that tax was net income. This was done for the reason that these profit taxes were not treated as income taxes in the various revenue acts. This in our opinion is the final test, and under it the munitions manufacturer's tax was not an income tax within the meaning of section 280 or within the meaning of the various revenue acts.

The motion to dismiss for want of jurisdiction is sustained on the ground that respondent has no authority to determine, and the Board has no authority to redetermine, a liability under section 280 in respect of a transferee of property of one who owed a munitions manufacturer's tax.